UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

TANESSA REYNE GREEN                    DOCKET NO. 6:13-cv-02734

VERSUS                                 JUDGE DOHERTY

COMMISSIONER OF THE                    MAGISTRATE JUDGE HANNA
SOCIAL SECURITY
ADMINISTRATION


## REPORT  AND  RECOMMENDATION


Before the Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be reversed and remanded

for further consideration consistent with this report and recommendation.

### BACKGROUND

The claimant, Tanessa Reyne Green, was born on February 18, 1973.[1]  On

April 13, 2011,[2] when she was thirty-eight years old, Ms. Green applied for a period

of disability, for disability insurance benefits, and for supplemental security income,

alleging a disability onset date of December 15, 2007[3] due to a neck injury and/or

---

[1]     Rec. Doc. 7-1 at 32.

[2]     Rec. Doc. 7-1 at 118.

[3]     Rec. Doc. 7-1 at 118.

degenerative disc disease in her cervical spine.[4]  Her alleged onset date was later changed to June 3, 2008,[5] which corresponds to the date on which she was last insured.[6]  Ms. Green graduated from high school and obtained vocational school training as a medical assistant.[7]  She has past work experience as a cashier at Wal-Mart, as a cafeteria worker in a feeding program for underprivileged children, as a certified nursing assistant in both hospital and home health environments, and as an enumerator for the United States census.[8]  She has not worked since October 17, 2012,[9] allegedly due to her disabling condition.

The record indicates that Ms. Green injured her neck in a motor vehicle accident in approximately 1996 and that she has experienced worsening symptoms since that time.[10]  Ms. Green sought treatment at Abbeville General Hospital on December 12, 2007, complaining of neck pain, and she was diagnosed with an acute

---

[4]     Rec. Doc. 7-1 at 2, 147.

[5]     Rec. Doc. 7-1 at 30.

[6]     Rec. Doc. 7-1 at 15.

[7]     Rec. Doc. 7-1 at 33, 148.

[8]     Rec. Doc. 7-1 at 33-34, 157.

[9]     Rec. Doc. 7-1 at 147.

[10]     Rec. Doc. 7-1 at 385.

myofascial strain.[11]   An MRI of that same date showed an unremarkable cervical spine.[12]

On March 17, 2008,[13] Ms. Green was seen at University Medical Center in Lafayette, Louisiana with complaints of migraine headaches and left upper arm weakness.  The treatment note references an MRI of the cervical spine that showed central disk protrusion at both C4-5 and C5-6 with mild cord contour abnormality. She was referred to a neurosurgeon at LSU in Shreveport, Louisiana.

She returned to the emergency room at the same hospital on April 17, 2008, again complaining of neck pain and was diagnosed with cervical radiculopathy.[14]

On July 25, 2008,[15] Ms. Green again presented at the ER at Abbeville General Hospital, complaining that she could not move her left arm.  Her physician ruled out an acute cerebrovascular accident.  The doctor noted that her "past medical history [is] significant for herniated cervical disc and left upper extremity weakness" and that she has "a history of cervical spinal stenosis as well as disc disease with nerve

---

[11]     Rec. Doc. 7-1 at 202-203.

[12]     Rec. Doc. 7-1 at 200.

[13]     Rec. Doc. 7-1 at 332-334.

[14]     Rec. Doc. 7-1 at 226-228.

[15]     Rec. Doc. 7-1 at 245-261.

impingement along the left side." He also noted that she was "currently awaiting surgical intervention."

On May 1, 2009,[16] Ms. Green was seen at the internal medicine clinic at University Medical Center in Lafayette, Louisiana. She complained of left shoulder pain, neck pain, and migraine headaches. She was referred to the neurosurgery department in Shreveport.

On April 23, 2010,[17] Ms. Green complained to a physician at the Abbeville General clinic of weakness in her left arm, and left shoulder and arm pain, decreased strength in her left hand and numbness in her fingers. At that time, she had an appointment to see a neurosurgeon in Shreveport on May 3.

Ms. Green returned to the clinic in Abbeville on May 7, 2010, again complaining of neck and shoulder pain.[18] It was noted that her pain was worse and that she had weakness in her left upper extremity and weak hand grasp. Her appointment in Shreveport had been rescheduled to July. She was seen in the clinic for the same complaints on May 10, 2010[19] and May 28, 2010.[20]

---

[16]     Rec. Doc. 7-1 at 381-382.

[17]     Rec. Doc. 7-1 at 373-376.

[18]     Rec. Doc. 7-1 at 371-372.

[19]     Rec. Doc. 7-1 at 369-370.

[20]     Rec. Doc. 7-1 at 366-368.

On July 8, 2010, Ms. Green was seen at the Louisiana State University Health Sciences Center in Shreveport and diagnosed with degenerative disc disease of the cervical spine.[21]   The treatment note references an MRI of the cervical spine from April 2010 that revealed a bulge impinging on the left nerve root.  She was prescribed medication and referred to the neurosurgical department for a consultation.

On August 30, 2010, Ms. Green again presented at the clinic in Abbeville.[22] She reported that she had been seen in the wrong clinic in Shreveport, having been seen by neurology instead of neurosurgery, and was being rescheduled.  A decreased range of motion in her shoulder was noted as well as shoulder crepitance.

On February 28, 2011,[23] Ms. Green reported to the nurse practitioner at the Abbeville clinic that she had been unable to get an appointment at the neurosurgery clinic at LSU in Shreveport.  She complained of continued pain and weakness in her left arm.

On March 18, 2011,[24] Ms. Green again visited the clinic at Abbeville General Hospital.  Her chief complaint was new onset right arm pain.  She reported that she

---

[21]     Rec. Doc. 7-1 at 320-323.

[22]     Rec. Doc. 7-1 at 360-362.

[23]     Rec. Doc. 7-1 at 351-353.

[24]     Rec. Doc. 7-1 at 348-350.

recently saw the neurosurgeon in Shreveport and had scheduled surgery for May 12. The impression assigned was herniated cervical disc.  Ms. Green followed up at the clinic on April 1, 2011.[25]

On May 23, 2011,[26] Ms. Green was seen at Abbeville General Hospital and reported that her surgery had again been postponed and would be rescheduled in June.

On July 23, 2011,[27] Ms. Green was examined by Dr. An Nguyen at the request of the state disability office for the purpose of determining whether Ms. Green was disabled.  Ms. Green complained of pain and weakness in her left arm as well as pain in the left side of her neck radiating to her left arm.  She reported that MRIs in 2008 and 2010 showed degenerative disk disease at the C4-5 and C5-6 levels.  Ms. Green stated that she was able to dress and feed herself, could perform household chores, did not drive, but was able to stand for twenty minutes at a time, to stand for two to three hours in an eight-hour day, to walk for fifteen minutes on level ground, to lift ten pounds, and to sit for as long as she wanted.  Dr. Nguyen observed that Ms. Green held her head tilted to the left with her arm hanging motionless and moved her head

---

[25]     Rec. Doc. 7-1 at 345-347.

[26]     Rec. Doc. 7-1 at 336-344.

[27]     Rec. Doc. 7-1 at 385-387.

and neck in one unit.  Still, her ambulation was normal and she was able get on and off the examination table, up and out of a chair, and to dress and undress herself without difficulty.  The range of motion of her cervical spine was limited.  Dr. Nguyen diagnosed degenerative disk disease and/or neck injury, stated that Ms. Green had an extremely stiff neck and extreme pain with manipulation of her neck in any direction.  Dr. Nguyen noted that Ms. Green "may be limited and only able to perform maneuvers that require neck movement on an occasional basis."

On September 15, 2011,[28] Ms. Green was seen at Abbeville General Hospital. Due to a death in her family, her surgery had again been rescheduled.  She continued to be prescribed flexeril and toradol.

An MRI at Abbeville General Hospital in February 2012 showed posterior disk protrusions at C4-5 and C5-6, encroaching on the spinal cord and deforming the cord's normal curvature as well as mild uncovertebral joint spurring at the same levels, with minimal foraminal narrowing bilaterally.[29]

---

[28]    Rec. Doc. 7-1 at 398-403.

[29]    Rec. Doc. 7-1 at 413.

On August 3, 2011, Ms. Green was found not to be disabled.[30]  She requested a hearing,[31] which was held on February 27, 2012 before Administrative Law Judge ("ALJ") Lawrence T. Ragona.[32]  At the hearing, Ms. Green explained that the condition of her cervical spine has resulted in very limited neck movement and substantial pain as well as weakness in her left arm and hand.  She testified that she stopped driving approximately a year prior to the hearing because she did not believe she could safely drive due to her inability to turn her head.  In addition to the stiffness in her neck, she testified sometimes cannot move her left arm at all and she walked at a slant, making her gait unsteady.  She confirmed that surgery had been recommended but had been rescheduled three or four times.  She testified that she cannot do housework except for folding some clothes.  Her nineteen-year-old daughter assists her with caring for her seven-year-old son.  She explained that the clinic at Abbeville General Hospital, where she is treated, no longer prescribes narcotic medications, so she was being prescribed non-narcotic medications that did not totally relieve her pain but caused her to be dizzy and drowsy.  She was able to go to church and used a computer only to help her seven-year-old with homework.

---

[30]     Rec. Doc. 7-1 at 50, 51.

[31]     Rec. Doc. 7-1 at 73.

[32]     Rec. Doc. 7-1 at 26-49.

The ALJ rendered an unfavorable decision on May 9, 2012.[33]  The claimant requested review of the ALJ's ruling, but the Appeals Council denied review.[34] Accordingly, the ALJ's decision is the Commissioner's final decision for purposes of judicial review.[35]

## ASSIGNMENT OF ERRORS

The claimant argues that the Commissioner's ruling is erroneous (1) because it fails to comply with controlling law regarding the evaluation of medical opinion evidence; and (2) because the ALJ's conclusion regarding the claimant's residual functional capacity is not supported by substantial evidence.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision that the claimant is not disabled is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[36]  If the Commissioner's findings are supported by substantial evidence and

---

[33]    Rec. Doc. 7-1 at 13-22.

[34]    Rec. Doc. 7-1 at 4.

[35]    42 U.S.C. § 405(g).

[36]    42 U.S.C. § 405(g); *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

the decision comports with relevant law, the decision must be affirmed.[37]  Substantial evidence is more than a mere scintilla and less than a preponderance.[38]  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[39]  Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole.[40] The court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[41]

A claimant seeking Social Security benefits bears the burden of proving that he is disabled.[42]  Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

---

[37]     *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[38]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[39]     *Boyd v. Apfel,* 239 F.3d at 704.

[40]     *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[41]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[42]     *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

12 months."[43]  Substantial gainful activity is defined as work activity that involves doing significant physical or mental activities for pay or profit.[44]

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled.  At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.  At step two, an individual who does not have a severe impairment will not be found disabled. At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.  If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made at step four. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform any other work at step five.[45]

---

[43]        42 U.S.C. § 423(d)(1)(A).

[44]        20 C.F.R. § 404.1572.

[45]        See, e.g., *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f).  See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

Before going from step three to step four, the ALJ assesses the claimant's residual functional capacity[46] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record.[47] The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[48]

The claimant bears the burden of proof on the first four steps.[49] At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[50] This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[51] If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to

---

[46]     20 C.F.R. § 404.1520(a)(4).

[47]     20 C.F.R. § 404.1545(a)(1).

[48]     20 C.F.R. § 404.1520(e).

[49]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[50]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[51]     *Fraga v. Bowen*, 810 F.2d at 1304.

rebut this finding.[52]   If the ALJ determines that the claimant is disabled or not disabled at any step, the analysis ends.[53]

In this case, the ALJ found, at step one, that Ms. Green had not engaged in substantial gainful activity since December 15, 2007, the alleged onset date of her disability.[54]  This finding is not supported by evidence in the record.  Ms. Green continued working at some level until October 17, 2010.[55]  However, the record does support the conclusion that Ms. Green's insured status expired on June 30, 2008.

At step two, the ALJ found that Ms. Green has the following severe impairments: degenerative disc disease of the cervical spine and hypertension.[56]  This finding is supported by evidence in the record.

At step three, the ALJ found that Ms. Green does not have an impairment or a combination of impairments that meets or medically equals a listed impairment.[57]  Ms. Green does not challenge this finding.  However, the ALJ failed to identify or

---

[52]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[53]    *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988). See, also, 20 C.F.R. § 404.1520(a)(4).

[54]    Rec. Doc. 7-1 at 15.

[55]    Rec. Doc. 7-1 at 147.

[56]    Rec. Doc. 7-1 at 15.

[57]    Rec. Doc. 7-1 at 21.

evaluate the listings he reviewed in reaching this finding.  This is error, which will be discussed more thoroughly, below.

At the next step of the process, the ALJ found that Ms. Green retains the residual functional capacity to perform sedentary work "except no work requiring full extension of the shoulders on reaching and no extreme range of motion of the neck."[58] Ms. Green objects to this finding.

At step four, the ALJ found that Ms. Green is unable to perform her past relevant work.[59]  This finding is supported by evidence in the record.

At step five, the ALJ applied the Medical-Vocational Guidelines as a framework and found that Ms. Green is not disabled.[60]  Ms. Green disputes this finding.

## DISCUSSION

### (1)   THE ALJ FAILED TO PROPERLY EVALUATE WHETHER MS. GREEN'S IMPAIRMENTS MEET OR EQUAL A LISTING

The ALJ concluded that none of Ms. Green's claimed impairments meet or equal a listing.  He reached this conclusion without identifying the listings he considered and without any comparison of Ms. Green's symptoms or clinical findings

---

[58]     Rec. Doc. 7-1 at 16.

[59]     Rec. Doc. 7-1 at 20.

[60]     Rec. Doc. 7-1 at 24.

-14-

with the criteria of any relevant listing.  This is insufficient.  An "ALJ is required to discuss the evidence and explain the basis for his findings at each unfavorable step of the sequential evaluation process."[61]  In *Audler v. Astrue*, the ALJ, at step three of the analysis:

> summarily concluded that "[t]he medical evidence indicates that the claimant has status post lumbar laminectomy, cervical disc herniation, headaches and chronic neck and back pain, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."  The ALJ did not identify the listed impairment for which Audler's symptoms fail to qualify, nor did she provide any explanation as to how she reached the conclusion that Audler's symptoms are insufficiently severe to meet any listed impairment.[62]

The Fifth Circuit concluded that "[s]uch a bare conclusion is beyond meaningful judicial review."[63]  The court then went on to explain that:

> By the explicit terms of the statute [42 U.S.C. § 405(b)(1)], the ALJ was required to discuss the evidence offered in support of Audler's claim for disability and to explain why she found Audler not to be disabled at that step.  Although the ALJ is not always required to do an exhaustive

---

[61]    *Williams v. Astrue*, No. 09-0130, 2010 WL 989216, at * 3 (W.D. La. Mar. 15, 2010), citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007), which in turn cites 42 U.S.C. § 405(b)(1).

[62]    *Audler v. Astrue*, 501 F.3d at 448.

[63]    *Audler v. Astrue,* 501 F.3d at 448, quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

point-by-point discussion, in this case, the ALJ offered nothing to support her conclusion at this step and because she did not, "we, as a reviewing court, simply cannot tell whether her decision is based on substantial evidence or not."[64]

In this case, the ALJ committed the same error as the ALJ in the *Audler* case. He stated that "[t]he claimant. . . advanced no argument that her condition meets or equals the criteria for any condition listed in Appendix 1." The evidence in the record does not support that statement. Furthermore, the amount or type of evidence presented by the claimant does not dictate the method to be used by the ALJ in evaluating the claimant's impairments. The ALJ then said, "Nor is it apparent on the face of the record that the claimant's condition is disabling per se." Making such a broad statement cannot relieve the ALJ of his duty to compare the criteria of relevant listings with the evidence in the record. The ALJ then attempted to defer to others, stating "[t]he examiners affiliated with Disability Determinations Services considered this issue at the initial level of administrative review and concluded no listing is met or equaled." The conclusions of the initial examiners are not controlling, as the determination of whether a listing is met or equaled is the province of the ALJ. The ALJ  case did not explain what listings he considered or how he reached the

---

[64]     *Audler v. Astrue*, 501 F.3d at 448, quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986).

conclusion that Ms. Green does not meet or equal them.  In accordance with the Fifth Circuit's reasoning, the undersigned is unable to determine whether the Commissioner's conclusion at step three is or is not based on substantial evidence. Therefore, the undersigned recommends that this matter be remanded for a thorough analysis of whether Ms. Green has an impairment or combination of impairments that meets or medically equals a listed impairment.

**(2)** **DID THE ALJ PROPERLY WEIGH DR. NGUYEN'S OPINIONS?**

In July 2011, the claimant was evaluated by Dr. An Nguyen.[65]  Dr. Nguyen noted that Ms. Green stated she had been injured in a motor vehicle accident approximately fifteen years previously and had experienced worsening symptoms ever since.  She also reported that MRIs in 2008 and 2010 showed degenerative disk disease at the C4-5 and C5-6 levels.  She complained of pain, particularly on the left side of her neck radiating to her left arm, as well as weakness in her arm.  Dr. Nguyen observed that Ms. Green "holds [her] head tilted to the left with left arm hanging motionless.  She moves in this position with her head and neck in that position and moves them as one unit with her body."[66]  Despite that description of Ms. Green's movements, Dr. Nguyen found that her ambulation was normal and noted that she had

---

[65]     Dr. Nguyen's report is found at Rec. Doc. 7-1 at 385-387.

[66]     Rec. Doc. 7-1 at 386.

no difficulty getting on and off the examination table, getting up and out of a chair, or dressing and undressing herself.  Testing revealed that Ms. Green's range of motion in her cervical spine was limited to twenty degrees of flexion, ten degrees of extension, ten degrees of lateral flexion, five degrees of rotation to the right and fifteen degrees of rotation to the left.[67]  Dr. Nguyen's impression was that Ms. Green has a neck injury and/or degenerative disk disease.  In her opinion, "[t]he claimant appeared to have an extremely stiff neck and extreme pain with manipulation of her neck in any direction.  She moved her head and neck in one unit with her body.  As such, she is likely limited in her ability to maneuver and move her neck in all directions.  She may be limited and only able to perform maneuvers that require neck movement on an occasional basis."[68]

The Social Security regulations and rulings explain how medical opinions are to be weighed.[69]  Generally, the ALJ must evaluate all of the evidence in the case and determine the extent to which medical source opinions are supported by the record.  In this case, the ALJ gave "significant weight" to Dr. Nguyen's opinions,[70] but

---

[67]    Rec. Doc. 7-1 at 387.

[68]    Rec. Doc. 7-1 at 387.

[69]    20 C.F.R. § 404.1527(c), § 416.927(c), SSR 96-2p, SSR 96-5p.

[70]    Rec. Doc. 701 at 20.

concluded that Ms. Green is able to perform a modified range of sedentary work that is not consistent with Dr. Nguyen's opinions.  In particular, Dr. Nguyen opined that Ms. Green is limited to moving her neck on an occasional basis.  "Occasional" means occurring from very little up to one-third of the time.[71]  The limitations recognized by the ALJ, however, have no temporal component.  The ALJ did not explain why he generally gave significant weight to Dr. Nguyen's opinions but deviated from her opinion in this regard.  This was error.  The ALJ did not identify a medical opinion in the record that contradicts Dr. Nguyen's opinion. The ALJ is not a physician and, consequently, is not permitted to substitute his opinion for that of the medical source.  "Although the ALJ may weigh competing medical opinions about. . . limitations and use objective medical evidence to support its determination that one opinion is better founded than another, neither the ALJ nor the court is free to substitute its own opinion."[72]  Accordingly, the undersigned recommends that this matter be remanded for a proper weighing of medical opinions.

### (3)   DID THE ALJ ERR IN EVALUATING THE CLAIMANT'S RESIDUAL FUNCTIONAL CAPACITY?

---

[71]    SSR 83-10.

[72]    *Fabre v. Astrue*, No. 13-00076-BAJ-RLB, 2014 WL 4386424, at *6 n. 6(M.D. La. Sept. 4, 2014).

The claimant contends that the ALJ erred in finding that she retains the residual functional capacity to perform sedentary work with the particular exceptions noted by the ALJ.  The ALJ found that Ms. Green retains the residual functional capacity to perform sedentary work "except no work requiring full extension of the shoulders on reaching and no extreme range of motion of the neck."[73]  Sedentary work, as defined in the Social Security regulations, involves lifting no more than ten pounds at a time, occasionally lifting or carrying articles like docket files, ledgers, and small tools, sitting for about six hours out of an eight-hour workday, and occasionally walking or standing.[74]

The ALJ found that Ms. Green's "activities of daily living including providing care for her three children, helping the children with their homework, using a computer, performing personal hygiene tasks independently, and attending church are seen as an indication that she is functioning at a level which is inconsistent with a disabled individual."[75]  Consistently, the Commissioner now argues that Ms. Green's

---

[73]     Rec. Doc. 7-1 at 16.

[74]     20 C.F.R. § 404.1567(a); *Ripley v. Chater*, 67 F.3d 552, 557, n. 25 (5th Cir. 1995); *Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir. 1989).

[75]     Rec. Doc. 7-1 at 20.

"reported daily activities provide substantial evidence in support of the ALJ's decision"[76]  The undersigned disagrees.

At the hearing, Ms. Green testified that she is incapable of doing any housework other than folding some clothes.  She stated that she uses the computer only to assist her seven-year-old son with his homework.  She also stated that she relies upon her nineteen-year-old daughter to assist her in caring for her younger son. She no longer drives because of the limited movement of her neck.  She is unsteady on her feet because she walks at a slant due to the lack of movement in her neck and the weakness in her arm.  She does attend church, but does not usher, sing in the choir, or attend Sunday School.  She relies upon her children to take her to church. She relies upon her children to carry the bags when they grocery shop.  The activities she described are extremely limited.  Therefore, the undersigned finds that the ALJ's statement that "she is functioning at a level which is inconsistent with a disabled individual"[77] lacks evidentiary support.

Accordingly, the undersigned recommends that this matter should be remanded so that the claimant's residual functional capacity can be reevaluated.

---

[76]     Rec. Doc. 11 at 5.

[77]     Rec. Doc. 7-1 at 20.

## CONCLUSION AND RECOMMENDATION

The undersigned finds that the ALJ failed to properly evaluate whether the claimant's impairments meet or equal a listing, applied an inappropriate legal standard in evaluating medical opinion evidence, and made a residual functional capacity determination that is not based on substantial evidence in the record. Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **REVERSED** and **REMANDED** for further administrative action under sentence four of 42 U.S.C. § 405(g), specifically for the purpose of (1) determining whether the claimant's impairments meet or equal a listing; (2) properly weighing medical opinions; and (3) reevaluating the claimant's residual functional capacity.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 6th day of February 2015.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE


COPY SENT:

DATE:   2/6/2015
BY:            EFA
TO:            RFD
                  cg

-23-